**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JOSE RAFAEL SEVILLANO-SEDA

**Plaintiff,**

v.

UNION DE TRONQUISTAS DE PUERTO
RICO, LOCAL 901, et al.

**Defendants.**

**CIVIL NO. 24-1143 (RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Union de Tronquistas de Puerto Rico, Local 901's ("Defendant" or the "Union") *Motion for Judgment on the Pleadings* ("*Motion*"). (Docket No. 38). For the reasons outlined below, the Court hereby **GRANTS** Defendant's *Motion for Judgment on the Pleadings*.

**I.    BACKGROUND**

Plaintiff José Sevillano ("Plaintiff" or "Mr. Sevillano") was employed by United Parcel Service ("UPS") for almost thirty years before his termination in 2019. (Docket No. 27 ¶¶ 18, 34). While employed by UPS, Mr. Sevillano was a member of the Union. <u>Id.</u> ¶ 19. The Union and UPS have a collective bargaining agreement ("CBA") that gives Mr. Sevillano the right to Union assistance and representation in various circumstances, including the filing of grievances against his employer. <u>Id.</u> ¶¶ 22-23.

From 2015 to 2019, Mr. Sevillano filed multiple complaints with UPS managers and security personnel against supervisors and coworkers who "were [allegedly] shipping packages under fraudulent accounts in order to ship illegal substances using the UPS infrastructure." Id. ¶¶ 29-30. Mr. Sevillano claims no action was taken to investigate his complaints. Id. ¶ 31. Instead, the same supervisors and coworkers Mr. Sevillano complained about began filing their own complaints against him (allegedly in retaliation for his complaints), claiming that Mr. Sevillano was creating a hostile work environment. Id. ¶¶ 32-33. Mr. Sevillano's employment with UPS was terminated in August 2019. Id. ¶ 34.

In September 2019, the Union filed a grievance to challenge Mr. Sevillano's termination before the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor and Human Resources (the "DLHR Arbitration"). Id. ¶ 35. In January 2022, the DLHR Arbitration issued its award, confirming Mr. Sevillano's termination. Id. ¶ 45. In February 2022, the Union filed a petition to vacate the DLHR arbitration in the Puerto Rican court system. Id. ¶ 46; see Union de Tronquistas de P.R., Loc. 901, Civil No. 22-1090 (Docket No. 29 at 6). The case was removed to the United States District Court for the District of Puerto Rico. (Docket No. 27 ¶ 48); Union de Tronquistas de P.R., Loc. 901, Civil No. 22-1090. On March 23, 2023, the district court granted summary judgment to UPS and affirmed the DLHR Arbitration award. Union de

Tronquistas de P.R., Loc. 901, Civil No. 22-1090 (Docket No. 29 at 11-13). Final judgment was entered that day, dismissing the Union's claim with prejudice. Union de Tronquistas de P.R., Loc. 901, Civil No. 22-1090 (Docket No. 30).

During this period, Mr. Sevillano filed a separate complaint with the National Labor Relations Board (NLRB) on June 12, 2023. (Docket No. 38-1 at 5). He claimed that from "March 3, 2023, and thereafter, [the Union] has failed in its duty of fair representation by refusing to process the grievance of Jose R. Sevillano for arbitrary, capricious, and bad faith reasons." Id. This complaint was dismissed on July 25, 2023. (Docket No. 38-2). Mr. Sevillano appealed on August 17, 2023, and this appeal was denied on November 2, 2023. (Docket Nos. 38-3 and 38-4).

On March 22, 2024, Mr. Sevillano filed the instant case against the Union, UPS, United Parcel Service, Co. ("UPC"), and several unidentified entities (collectively, "Defendants"). (Docket No. 1). The *Amended Complaint* ("*Complaint*") was filed on September 24, 2024. (Docket No. 27). First, Mr. Sevillano sought relief from the 2023 final judgment under Rule 60(b)(3). Id. ¶¶ 92-98. Second, he argued that the Union breached its duty of fair representation in violation of various federal labor laws including the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*; the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.*; and the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq*. Id. ¶¶ 105-11. Mr. Sevillano seeks compensatory, punitive, and liquidated damages; back pay and interest; lost benefits; and attorney's fees, costs, litigation expenses, and necessary disbursements. Id. at 20-21.

On October 1, 2024, UPS and UPC filed a *Motion to Dismiss* seeking their dismissal from the *Complaint*, which was deemed unopposed after Mr. Sevillano failed to respond to it. (Docket Nos. 29 and 32). On January 7, 2025, the Court granted this motion, dismissing both UPS and UPC from the instant case and Mr. Sevillano's Rule 60(b)(3) claim in its entirety. (Docket No. 33). On February 4, 2025, Mr. Sevillano filed a *Motion for Reconsideration*, which the Court denied the following day. (Docket No. 42).

Mr. Sevillano has appealed the Court's opinion and order granting UPS's and UPC's *Motion to Dismiss*. (Docket No. 43). An interlocutory appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." P.R. Ports Auth. v. Caldwell, Civ. No. 23-1357, 2024 WL 1287539, at *3 (D.P.R. Feb. 14, 2024) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)). The district court retains jurisdiction over aspects of the case not involved in the appeal. *See* Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 93 (1st Cir. 2003); Contour Design, Inc. v. Chance Mold Steel Co., Ltd., 649 F.3d 31, 34 (1st Cir. 2011) ("in

most respects and absent a stay, further proceedings in the same controversy often may continue in the district court while an appeal in an earlier phase is pending."). Furthermore, no final judgment was issued as to the dismissal of the Rule 60(b)(3) claim or of co-defendants UPS and UPC. This means that the opinion granting the *Motion to Dismiss* cannot be appealed at this juncture. *See* <u>Barrett ex rel. Estate of Barrett v. United States</u>, 462 F.3d 28, 32 (1st Cir. 2006); Fed. R. Civ. P. 54(b).[1] The Court has jurisdiction over the present pending motion for judgment on the pleadings.

On January 28, 2025, the Union filed an *Answer* to the *Amended Complaint* and the instant *Motion* seeking dismissal of Mr. Sevillano's remaining claims because the Puerto Rico law claims are preempted and the remaining claims are subject to *res judicata*, fail to show grounds for relief, and are time-barred. (Docket Nos. 37 and 38). The Court issued a show cause order on March 7, 2025, asking Mr. Sevillano to show why the *Complaint* should not be dismissed for a lack of jurisdiction under 29 U.S.C. § 160(f). (Docket No. 49). Mr. Sevillano filed his *Response* to both the *Motion* and the Court's show cause order on April 29, 2025. (Docket No. 56).

---

[1] On April 1, 2025, the First Circuit issued a show cause order requesting Mr. Sevillano move for voluntary dismissal of the appeal or show cause as to why the appeal should not be dismissed for lack of jurisdiction. A response to this order is due on June 16, 2025. *See* <u>Sevillano-Seda v. United Parcel Serv. et al.</u>, No. 25-1124.

## II.  LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(6)

To determine if a complaint has stated a plausible, non-speculative claim for relief, a court must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011) (emphasis in original). This requires treating "any non-conclusory factual allegations in the complaint as true." Nieto-Vicenty v. Valledor, 984 F.Supp. 2d 17, 20 (D.P.R. 2013); Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (courts must take "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor").

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. et al. v. Twombly et al., 550 U.S. 544, 555 (2007) (citation omitted). Further, a complaint will not stand if it offers only "naked assertion[s] devoid of further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Courts may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts'

susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" <u>Schatz</u>, 669 F.3d at 55-56 (quoting <u>Arturet-Vélez v. R.J. Reynolds Tobacco Co.</u>, 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

**B. Judgment on the Pleadings Under Rule 12(c)**

A motion for judgment on the pleadings is typically evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *See* <u>Taylor v. Milford Regional Med. Ctr., Inc.</u> 733 F.Supp. 3d 8, 13 (D.Mass. 2024) (citing <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d 1, 5 (1st Cir. 2007)). This type of motion "calls for an assessment of the merits of the case at an embryonic stage." <u>Pérez-Acevedo v. Rivero-Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008) (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 12(c) (a motion for judgment on the pleadings can be made after the pleadings have closed, "but early enough not to delay trial").

Unlike a Rule 12(b)(6) motion, a Rule 12(c) motion "implicates the pleadings as a whole." <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 54-55 (1st Cir. 2006) (citation omitted). A court evaluating a Rule 12(c) motion "'view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom' in its favor." <u>Children's Hosp. Corp. v. Cakir</u>, 183 F.Supp. 3d 242, 244 (D. Mass. 2016) (quoting <u>Pérez-Acevedo</u>, 520 F.3d at 29 (internal citation and quotation marks omitted)). "[A]ssertions in the answer that

have not been denied and do not conflict with the assertions in the complaint are taken as true." Id. (citation omitted). A court may "consider documents fairly incorporated into the pleadings and facts susceptible to judicial notice," as allowed under Rule 12(b)(6). Id. (citation omitted). The court cannot decide any contested facts when evaluating a Rule 12(c) motion and may enter judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres, 445 F.3d at 54 (citing Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)). An exception to this general treatment of Rule 12(c) motions exists if the court is presented with and does not exclude "matters outside the pleadings"; the motion is then treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

### III. APPLICABLE LAW

**A. Breach of Duty of Fair Representation**

The duty of fair representation is a judge-made doctrine that is derived from Section 9(a) of the NLRA and applies to "all union activity." Ljungberg v. Saint Vincent Hosp., Civ. No. 23-40166, 2024 WL 4228934, at *6 (D.Mass. Sept. 18, 2024) (citing BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 830 (1st Cir. 1997)); Lydon v. Loc. 103, Int'l Brotherhood of Elec. Workers, 770 F.3d 48, 56 (1st Cir. 2014) (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67

(1991)). This duty refers to a union's "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967) (citation omitted); *see also* Emmanuel v. Int'l Broth. of Teamsters, Loc. Union No. 25, 426 F.3d 416, 419-20 (1st Cir. 2005) (a union must "fairly represent all of those employees both in its collective bargaining...and in its enforcement of the resulting collective bargaining agreement.") (citations and internal quotation marks omitted). This duty exists because a union is the "exclusive bargaining representative" for its members. Emmanuel, 426 F.3d at 419.

The duty of fair representation is breached when a union's "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith"; proof of "any of these bad acts" can establish a claim against the union. Miller v. U.S. Postal Serv., 985 F.2d 9, 11 (1st Cir. 1993) (quoting Vaca, 386 U.S. at 190); Williams v. Sea-Land Corp., 844 F.2d 17, 19 (1st Cir. 1988) (internal marks omitted). A union's actions are arbitrary if, considering "the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,'...as to be irrational." Air Line Pilots Ass'n, Int'l, 499 U.S. at 67 (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)); *see also* Lydon, 770 F.3d at 56

(arbitrary behavior lacks any "rational basis or speculation"). To determine if a union behaved arbitrarily, a court must "examine objectively the competence of the union's representation" and give the union's conduct "substantial deference." Emmanuel, 426 F.3d at 420 (citations omitted). This standard "recognizes that unions must have ample latitude to perform their representative functions." Id. (citing Miller, 985 F.2d at 12). It is ultimately "for the union, not the courts to decide whether and in what manner a particular grievance should be pursued." Id. at 421.

"Discrimination refers to racial and gender discrimination as well as other distinctions made among workers, including lack of union membership." Good Sam. Med. Ctr. v. Nat'l Lab. Rels. Bd., 858 F.3d 617, 630 (1st Cir. 2017) (citing Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6, 493 U.S. 67, 78 (1989)). Discrimination is actionable when it is "intentional, severe, and unrelated to legitimate union objectives." Alston v. Int'l Ass'n of Firefighters, Loc. 950, 998 F.3d 11, 28 (1st Cir. 2021) (quoting Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emps. of Am. v. Lockridge, 403 U.S. 274, 301 (1971)).

"A union acts in bad faith when it acts with an improper intent, purpose, or motive"; bad faith "encompasses fraud, dishonesty, and other intentionally misleading conduct." Id. (citation and internal quotation marks omitted). "[M]ere negligence or erroneous judgment" by a union does not constitute

a breach of its duty of fair representation. Bryan v. Am. Airlines,
988 F.3d 68, 74 (1st Cir. 2021) (quoting Miller, 985 F.2d at 12).

A plaintiff bringing a hybrid claim challenges both the
allegedly unlawful actions of his employer and union. *See*, *e.g.*,
Barth v. City of Cranston by and through Capuano, 44 F.4th 65, 69
(1st Cir. 2022). Usually, an employee suing his employer for a
breach of a collective bargaining agreement must exhaust any
remedies provided for in the agreement and is bound by its
provisions. *See* DelCostello v. Int'l Bhd. of Teamsters, 462 U.S.
151, 163 (1983) (citations omitted). However, this outcome is
unjust when the union breaches its duty of fair representation.
Id. at 164. Under those circumstances, "an employee may bring suit
against both the employer and the union, notwithstanding the
outcome or finality of the grievance or arbitration proceeding."
Id. (citations omitted). A successful hybrid claim must prove: (i)
the employer breached the collective bargaining agreement,
violating of § 301 of the LMRA; and (ii) the union breached its
duty of fair representation. *See* id. at 164-65 (citations omitted);
Ljungberg, 2024 WL 4228934, at *8; *see also* Vaca v. Sipes, 386
U.S. 171, 187 (1967). These two claims are "inextricably
interdependent" despite being separate causes of action. United
Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66 (1981) (Stewart,
J., dissenting); *see also* Demars v. Gen. Dynamics Corp., 779 F.2d
95, 97 (1st Cir. 1985) (collecting cases). A plaintiff may "sue

one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." <u>DelCostello</u>, 462 U.S. at 164. If a plaintiff fails to prove one claim, the other "must also fail."[2] <u>Barth</u>, 44 F.4th at 69 (quoting <u>Miller</u>, 985 F.2d at 11); *see also* <u>Morales-Vallellanes v. U.S. Postal Serv.</u>, Civ. No. 97-2459, 2002 WL 35651455, at *3 (D.P.R. July 24, 2002) (citations omitted) ("Failure to prove either [an employer's breach of contract and a union's breach of its duty of fair representation] results in failure of the entire hybrid action.").

"Hybrid actions are subject to a six-month statute of limitations." <u>Mason v. Cent. Mass Transit Mgmt., Inc.</u>, 405 F.Supp. 3d 320, 327 (D.Mass. 2019) (citation omitted). The cause of action "normally accrues when a plaintiff could first have successfully maintained a suit based on that cause of action." <u>Demars</u>, 779 F.2d at 97 (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. Plaintiff Cannot Plausibly Allege Facts Showing That the Union Breached Its Duty of Fair Representation

Mr. Sevillano brought a hybrid action against the Union and his employer that: (i) asserts the Union breached its duty of fair representation to him, and (ii) sought Rule 60 relief from the

---

[2] A breach of duty of fair representation claim can be brought outside of a hybrid action. *See* <u>Breininger</u>, 493 U.S. at 80, 83-84 (for example, "the earliest fair representation suits involved claims against unions for breach of the duty in negotiating a collective-bargaining agreement, a context in which no breach-of-contract action against an employer is possible."). Here, both parties refer to the *Complaint*'s "hybrid" claims; the Court proceeds accordingly.

earlier federal court case that upheld the DLHR Arbitration's
finding that his termination was justified. *See* DelCostello, 462
U.S. at 163; (Docket No. 27). Although the *Complaint*'s Rule 60
claim does not directly mention the alleged breach of CBA, it
contests the outcome of the DLHR Arbitration, which examined
whether Mr. Sevillano's discharge violated the CBA. *See* (Docket
No. 27); Union de Tronquistas de P.R., Loc. 901, Civil No. 22-1090
(Docket No. 29 at 2). The *Complaint* thus brings a hybrid claim
against UPS and UPC for breach of the CBA, in violation of § 301
of the LMRA, and against the Union for breach of duty of fair
representation. *See* DelCostello, 462 U.S. at 163. Ultimately, the
*Complaint* cannot survive dismissal under Fed. R. Civ. P. 12(c).

> *i. Plaintiff cannot show his employer breached its collective*
>    *bargaining agreement*

After viewing the facts in the *Complaint* in the light most
favorable to Mr. Sevillano and drawing all reasonable inferences
in his favor, the Court cannot ignore an insurmountable obstacle:
on three separate occasions, the decision to terminate Mr.
Sevillano has been upheld. *See* Children's Hosp. Corp., 183 F.Supp.
3d at 244. First, the January 2022 DLHR Arbitration award affirmed
the termination without finding that UPS or UPC had breached the
CBA by terminating Mr. Sevillano. (Docket No. 27 ¶ 45). Second,
the United States District Court for the District of Puerto Rico
affirmed the DLHR Arbitration's award via summary judgment in March

2023. (Docket Nos. 27 ¶¶ 48, 74 and 38 at 6-7). While this decision focused on the arbitration's decision-making process and did not independently find whether the CBA was violated, that Court still affirmed an award that absolved Mr. Sevillano's employer from any alleged violations of the CBA. *See* (Docket No. 27 ¶ 74); Union de Tronquistas de P.R., Loc. 901, Civil No. 22-1090. Third, Mr. Sevillano filed the instant case seeking relief from the previous decisions; in January 2025, the Court dismissed his Rule 60(b)(3) claim that sought relief from the previous federal suit and dismissed UPS and UPC from the case. (Docket No. 33). This opinion has been appealed, although as discussed above, it is unappealable at this juncture. (Docket No. 43); *see* Barrett ex rel. Estate of Barrett, 462 F.3d at 32; Fed. R. Civ. P. 54(b).

In sum, Mr. Sevillano has no live claim for breach of the CBA, the DLHR Arbitration found UPS and UPC did not violate the CBA, and two federal district court decisions affirmed the DLHR Arbitration's decision. These "uncontested and properly considered facts" cannot be construed to show Mr. Sevillano's employer breached the CBA. Aponte-Torres, 445 F.3d at 54. Having been unable to satisfy one part of the hybrid action, "failure of the entire hybrid action" is unavoidable. Morales-Vallellanes, 2002 WL 35651455, at *3; Miller, 985 F.2d at 11. Dismissal of Mr. Sevillano's claims would be appropriate for this reason alone;

however, the Court proceeds to examine the second part of his
hybrid action.

>    *ii. Plaintiff does not allege facts to show his union breached*
>        *its duty of fair representation*

Mr. Sevillano does not specify whether the Union's alleged
breach of duty of fair representation stems from arbitrary
behavior, bad faith, or discrimination. (Docket Nos. 27 and 56);
*see* <u>Vaca</u>, 386 U.S. at 190. The Court examines all three
possibilities in turn, as proof of "any of these bad acts" could
establish a claim against the Union. <u>Miller</u>, 985 F.2d at 11.

<u>First</u>, Mr. Sevillano has not alleged facts to plausibly show
the Union acted arbitrarily. This is a high standard, requiring
that, given "the factual and legal landscape at the time of the
union's actions, the union's behavior is so far outside a 'wide
range of reasonableness,'...as to be irrational." <u>Air Line Pilots</u>
<u>Ass'n, Int'l</u>, 499 U.S. at 67 (quoting <u>Ford Motor Co.</u>, 345 U.S. at
338). Significant deference is given to a union's conduct, and it
is not a court's job to look back and decide "whether and in what
manner a particular grievance should have been pursued." <u>Emmanuel</u>,
426 F.3d at 420-21. The crux of Mr. Sevillano's argument is that
the Union improperly handled the DLHR arbitration and first federal
court case by failing to inform him on the status of the
proceedings, withholding pertinent evidence that would have shown
Mr. Sevillano's termination retaliatory in nature, permitting his

employer to submit "fabricated affidavits" in support of Mr. Sevillano's termination. (Docket No. 27 ¶¶ 35-58).

Mr. Sevillano's dissatisfaction with how the Union challenged his termination does not mean the Union acted arbitrarily. *See* Lydon, 770 F.3d at 56 (arbitrary behavior lacks any "rational basis or speculation"). The Union tried twice to challenge UPS's actions. Even assuming it had approached the DLHR Arbitration or first federal case with poor strategies or failed to timely inform Mr. Sevillano on the status of the proceedings, its behavior cannot be plausibly interpreted as irrational. Furthermore, Mr. Sevillano claims the Union "allowed" the first federal case to be dismissed because it "failed to comply with certain orders and rules" during the proceedings. (Docket No. 27 ¶ 58). But the plain language of the opinion dismissing that case *on the merits* states that UPS obtained summary judgment after the Court found there were no grounds to vacate the DLHR Arbitration Award. *See* Union de Tronquistas de P.R., Loc. 901, Civil No. 22-1090 (Docket No. 29). Mr. Sevillano cannot claim the Union "failed to prosecute" his case when it did so twice, nor criticize it for "allow[ing]" an unfavorable judgment to be issued. (Docket No. 27 ¶ 106). Similarly, while Mr. Sevillano points to a lack of notice flowing from the Union while these two proceedings unfolded, poor communication does not establish arbitrary behavior that would breach the Union's duty of fair representation. Id.; *see* Bryan,

988 F.3d at 74 (stating that "mere negligence or erroneous judgment" does not breach the duty of fair representation). Mr. Sevillano's factual allegations are insufficient to show that the Union engaged in arbitrary behavior.

Second, Mr. Sevillano has not alleged facts to plausibly show that the Union discriminated against him, and any discussion of discrimination in his pleadings is superficial at best. The *Complaint* states that the Union, UPS, and UPC's actions constituted "discrimination, retaliation, and breach of duty" that resulted in harm to Mr. Sevillano, including feelings of humiliation and discrimination. (Docket No. 27 ¶ 89). However, the facts in the *Complaint* cannot support a finding that Mr. Sevillano was discriminated against for complaining about his coworkers and supervisors because they are "naked assertion[s] devoid of further factual enhancements". Ashcroft, 556 U.S. at 678. No details are offered beyond generic assertions that Mr. Sevillano's termination was illegal, that his employer and the Union acted illegally, and that the Union failed to properly contest his termination during the DLHR Arbitration and first federal case. (Docket No. 27). The Court cannot plausibly find that the Union's representation of Mr. Sevillano was tainted by "intentional, severe" discrimination "unrelated to legitimate union objectives." Alston, 998 F.3d at 28. This is particularly true given the Union spent three-and-a-half years disputing Mr. Sevillano's termination in two separate

forums. Any claims of a breach of duty of fair representation due to discrimination cannot avoid dismissal under Fed. R. Civ. P. 12(c).

Third, Mr. Sevillano has not alleged facts to plausibly show that the Union acted in bad faith in its handling of the DLHR Arbitration and first federal case. This would require the Union to have acted "with an improper intent, purpose, or motive," including behavior such as "fraud, dishonesty, and other intentionally misleading conduct." Alston, 998 F.3d at 28 (citation and internal quotation marks omitted). Importantly, mere negligence does not rise to the level of bad faith. *See* Bryan, 988 F.3d at 74. The *Complaint* argues that the Union acted with bad faith in contesting Mr. Sevillano's termination because the same coworkers and supervisors he accused of misbehavior were Union delegates who "unduly influenced the Union not to diligently present and orient" Mr. Sevillano during the grievance process. (Docket No. 27 ¶¶ 40-42). As discussed above, the *Complaint* relies on "naked assertion[s] devoid of further factual enhancements". Ashcroft, 556 U.S. at 678. There is little context or explanation for the claims against the Union beyond repeated assertions that the Union acted wrongly at various points during the DLHR Arbitration and first federal court case. This falls short of the standard imposed by Fed. R. Civ. P. 12(b)(6). *See* Bell Atl. Corp., 550 U.S. at 555.

Furthermore, the Union's purported bad acts are facially unproblematic as they relate to: (1) the Union's decision to use certain evidence at the DLHR Arbitration and in the first federal court case; and (2) the Union's alleged failure to inform Mr. Sevillano on the progress of these proceedings. (Docket No. 1 ¶¶ 43-58). Mr. Sevillano's contention that the Union did not let him prosecute his case is confusing, as he was not a party to these proceedings because the Union was challenging his termination as his "exclusive representative." Id. ¶¶ 21, 57. The *Complaint* ties allegedly improper motivations and actions by the Union's delegates to the Union's strategy and outcomes in the DLHR Arbitration and first federal case. However, there is no explanation of how the Union's delegates could have been involved in sabotaging Mr. Sevillano's claim, and the bulk of the *Complaint*'s allegations relate to the Union's strategic choices and judgments made during the DLHR Arbitration and first federal case. Any poor decisions made by the Union do not show a breach of duty of fair representation, and as stated above, the years-long period the Union spent advocating on Mr. Sevillano's behalf cuts against any claims that the Union acted in bad faith or failed to take "any action to assist and prosecute" his grievance. Id. ¶ 82.

Mr. Sevillano has not alleged facts to plausibly show the Union breached its duty of fair representation by acting arbitrarily, discriminatorily, or in bad faith. Miller, 985 F.2d

at 11. Without satisfying one of these criteria, his hybrid claim cannot avoid dismissal under Fed. R. Civ. P. 12(c).

**B. The Court Does Not Reach Plaintiff's Puerto Rico Law Claims**

The Court does not reach Mr. Sevillano's Commonwealth law claims because none of Mr. Sevillano's federal law claims survive dismissal under Rule 12(b)(6). Considering First Circuit case law, the Court declines to exercise supplemental jurisdiction over the remaining Puerto Rico torts claims. *See*, *e.g.*, Suárez v. Alivia Specialty Pharm., LLC, Civ. No. 24-1381, 2024 WL 4337329, at *1 (D.P.R. Sept. 27, 2024) (when "federal claims are dismissed at an early stage of the proceedings, a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims."); S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 92 (1st Cir. 2014).

**C. Additional Issues**

First, the *Response* introduces a new claim under 42 U.S.C. § 1983. (Docket No. 56 ¶¶ 10-11). The Court categorically rejects any efforts to amend the *Complaint* by adding a new claim in a response in opposition to a motion for judgment on the pleadings. *See* Ortiz v. Jimenez-Sanchez, 98 F.Supp. 3d 357, 365 n.5 (D.P.R. 2015) (plaintiffs cannot "add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss");

Dorsey v. Kelly et al., Civ. No. 17-1542, 2017 WL 5712686, at *3 (D.P.R. Nov. 28, 2017) ("A plaintiff cannot add new claims to a complaint in opposition to a motion to dismiss."); Principe v. M 2 M Glob. Corp., Civ. No. 17-2262, 2018 WL 4735720, at *4 (Sept. 28, 2018) ("A response in opposition to a motion for judgment on the pleadings is unmistakably the improper vehicle in which to amend the complaint to include additional facts."). Even if the Court could consider the § 1983 claim, it would fail on multiple grounds, namely because Mr. Sevillano has not argued that the Union acted under color of state law and provides no further development or discussion of his claim. *See* Rossi-Cortes v. Toledo-Rivera, 540 F.Supp. 2d 318, 323 (D.P.R. 2008); 42 U.S.C. § 1983; L. CV. R. 7(a) (motions must contain citations and supporting authorities for their claims). The Court shall not consider this further.

Similarly, the *Response* states that Mr. Sevillano's claims under "LMRDA or Section 1983 are distinguishable from the claims under the LMRA" and seems to reference an independent claim under § 101 of the LMRDA that is separate from the aforementioned hybrid claim. (Docket No. 56 ¶¶ 6, 11). This claim is not referenced in the *Complaint*, as the LMRDA is only mentioned in the context of a breach of fair duty claim involving the LMRDA, LMRA, and NLRB, which both parties treat as a hybrid claim. (Docket Nos. 27; 38 and 56). The *Complaint* lists no separate cause of action relating to the LMRDA, nor is there any indication that Mr. Sevillano

intended to bring such a claim. (Docket No. 27). The Court will not consider any possible separate LMRDA claim raised in the *Response*. *See*, *e.g.*, <u>Ortiz</u>, 98 F.Supp. 3d at 365 n.5. Furthermore, this claim would fail if it was considered on the merits, as it is only briefly mentioned with minimal citation and discussion, leaving the Court with little, if any, detail as to what this claim involves and how it would differ from Mr. Sevillano's other claims. *See* <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

<u>Second</u>, the *Complaint* references alleged retaliatory behavior by the Union, UPS, and UPC. (Docket No. 27 ¶¶ 76-78, 84, 86, 88, 89). However, Mr. Sevillano makes no mention of a retaliation claim in his *Response*, and the *Complaint* does not reference any specific federal or Commonwealth laws indicating Mr. Sevillano intended to bring a claim for retaliation. (Docket Nos. 27 ¶ 4 and 56). The closest Mr. Sevillano comes to bringing a recognizable retaliation claim is stating that his "[e]mployer's illegal actions against [Mr. Sevillano] were in violation of anti-retaliation federal and state laws," without specifying what these laws are. (Docket No. 27 ¶ 78). Any retaliation claim Mr. Sevillano intended to bring is thus waived as underdeveloped. *See* <u>Zannino</u>, 895 F.2d at 17.

For these reasons, Mr. Sevillano has no claims that can avoid dismissal under Fed. R. Civ. P. 12(c). The DLHR arbitration, NLRB

complaint, first federal case, and instant opinion and order all affirm the same point: despite Mr. Sevillano's dissatisfaction with his termination and the Union's strategies and efforts to contest it, neither his employer nor the Union have breached any duty owed to him. Continued efforts to the contrary are unlikely to be resolved differently, making dismissal appropriate here. *See* Ackermann v. United States, 340 U.S. 193, 198 (1950) ("there must be an end to litigation someday").

## V.    CONCLUSION

For the foregoing reasons, Defendants' *Motion for Judgment on the Pleadings* at Docket No. 38 is hereby **GRANTED.** Plaintiff's *Amended Complaint* is hereby **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of June 2025.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE